1

2                          **UNITED STATES DISTRICT COURT**

3                                **DISTRICT OF NEVADA**

4                                       **\* \* \***
ANTHONY KISER, *et al*,                        )
5                                              )
                   Plaintiffs,                 )
6                                              )        2:11-cv-00165-JCM -VCF
   v.                                          )
7                                              )        **O R D E R**
   PRIDE COMMUNICATIONS, INC., *et al.,*        )
8                                              )
                   Defendant.                  )
9    _____ )

10        Before the court is defendant Pride Communications, Inc., *et al*'s Motion For Clarification of

11   the Court's Order. (#47).  Plaintiffs Anthony Kiser *et al* filed an Opposition (#49), and defendants filed

12   a Reply (#51).   Plaintiffs filed a Motion To Strike the Declaration of Craig Lusk In Support of

13   Defendants' Reply (#55).  Defendants filed an Opposition (#59), and plaintiff filed a Reply (#61).  Also

14   before the court is plaintiffs' Motion For Contempt And To Enforce Court's Order.  (#50).  Defendants

15   filed an Opposition (#53), and plaintiffs filed a Reply (#56).

16        On January 19, 2012, Julio Fernandez filed a Notice of Filing of Consent To Joinder Under 19

17   U.S.C. § 216(b).  (#52).  Defendants filed a Motion To Strike Julio Fernandez's Consent To Joinder.

18   (#54).  Plaintiffs filed an Opposition (#57), and defendants filed a Reply (#60).  The court held a hearing

19   on March 5, 2012.

20        Plaintiff Anthony Kiser filed his class action complaint on behalf of himself and "all persons

21   similarly situated," seeking overtime wages under the Fair Labor Standards Act (hereinafter "FLSA")

22   and state law.  (#1).  The purported class members consist of those employed by defendant Pride as

23   installers to perform installation of cable, internet, and phone services.  *Id.*  Specifically, plaintiff Kiser

24   contends in the complaint that these employees were paid on a per job or "piece rate" basis, and were

25   never compensated for overtime for working an excess of forty (40) hours per week.  *Id.*  Plaintiff

26   alleges that the "payroll check registers, billing trackers, and time clock records maintained by Pride

1  were all fictitious and created to evade the overtime payments requirements of the FLSA." (#28).

2  **Motion For Clarification (#47)**

3      **A.    Background**

4      On July 29, 2011, plaintiffs filed a motion to compel (#28), asking this court to enter an order

5  "directing that defendants produce materials that are properly responsive to certain requests in plaintiffs'

6  First Request for the Production of Documents, such materials consisting of: (1) Payroll Check

7  Registers in their electronic form; (2) Billing Trackers in their electronic form; (3) Work Orders/TOA

8  Records in their electronic form; and (4) Time Clock Records in their electronic form. Defendants

9  opposed the motion, asserting that they should not be compelled to produce the electronic information

10  because, among other reasons, it is irrelevant and the defendants do not maintain the information sought.

11  (#29).

12      On October 26, 2011, the court issued an order granting the motion to compel (#28), and

13  ordering defendants Pride Communications, Inc. et al to produce the requested documents, in any and

14  all available forms, on or before November 30, 2011. (#39). The court overruled defendants' objection

15  that they could not produce the documents because they were not in possession of the documents

16  sought, and stated that since "defendants requested and ordered the third-party payroll vendor,

17  Southwest Payroll Service, Inc. (hereinafter "Southwest Payroll"), to perform the acts of processing and

18  maintaining the payroll and the accompanying records," "it is "inconceivable" that the defendants lack

19  the ability to request and obtain such records from Southwest Payroll Service, Inc." *Id.*

20      On November 30, 2011, defendants produced over 1,100 documents consisting of payroll checks

21  registers, W-2's, and check stubs. (#47). On December 5, 2011, and January 6, 2012, defendants

22  supplemented their production with additional records. *Id.* Defendants assert that they are "currently

23  collating thousands of additional documents encompassing billing trackers and time records and will

24  supplement [their] production as soon as possible." *Id.* On December 5, 2012, after the defendants

25  supplemented their production, plaintiffs' counsel sent a letter to defendants asserting that the

26  2

1    productions of documents were only "partially in compliance with the [c]ourt's [o]rder," and seeking

2    production of the material produced in PDF format in its "native, electronic form." (#47 Exhibit C).

3    **B.    Arguments**

4         In the instant motion, defendants seek clarification of this court's order (#39) as to the electronic

5    records it must produce. (#47). Defendants assert that they did not alter the documents, and only added

6    bate stamps and redacted social security numbers of employees and information relating to employees

7    (*e.g.* administrators, accountants, managers, supervisors, and owners) not subject to the "similarly

8    situated" definition as explained by the court. *Id.* Defendants argue that it appears that the plaintiffs

9    want a copy of the payroll company's database, but that it is impossible to redact and bate stamp

10   documents through "the third party payroll system." *Id.*

11        Defendants also address TOA records requested by the plaintiffs. *Id.* Defendants contend that

12   these records are on a "web-based system," and that since the TOA software is owned by a third-party

13   and Cox Communications licenses its use, defendants "have no rights or licenses for its use." *Id.*

14   Defendants argue that there is no way to produce such records "short of printing them out and producing

15   a hard copy," and that the records would still need to be redacted. *Id.* The defendants ask this court for

16   guidance as to "how it must produce the electronic payroll records without violating the important rights

17   of third parties," and "as to how it must produce TOA records in electronic format." *Id.*

18        In plaintiffs' opposition, they assert that the court's order (#39) does not need clarifying, because

19   the order "clearly commands production of all electronic records in possession of, or accessible to, the

20   defendant." (#49). The plaintiffs argue that the defendants could have attempted to secure a protective

21   order to protect the third parties, but that defendants have never communicated with plaintiffs in this

22   regard and are no simply trying to "obstruct and delay discovery." *Id.* Plaintiffs also assert that the

23   defendants' factual assertions relating to their inability to produce discovery in electronic form in

24   compliance with the court's order are not supported by a declaration of any kind. *Id;* See *In re Heparin*

25   *Prods. Liab. Litig.,* 273 F.R.D. 399, 410-411 (N.D. Ohio 2011)(holding that a party making

26

3

representations to the court relating to the nature or availability of discovery must corroborate their representations with a declaration from a witness with relevant personal knowledge.).

Plaintiffs argue that defendants have failed to explain what sorts of computerized records they have created and maintain. (#49). Plaintiffs state that they desire the computerized payroll information because "defendants' known payroll records and billing tracker records indicate a violation of the FLSA occurred." *Id.* If records indicating the overtime and regular time and piece rate amounts paid each week exist in computerized records maintained by the defendants, plaintiffs assert that "production of the payroll company database records is very likely unnecessary." *Id.* Plaintiffs assert that defendants should have electronic payroll information that they forwarded to the payroll company. *Id.*

With regard to redacting personal information and employees that are not considered "similarly situated," the plaintiffs assert that the defendants could have and should have sought a protective order, but instead "unilaterally chose to ignore the [c]ourt's explicit directive to produce the electronic records in their native form..." *Id.* Plaintiffs also assert that any concerns that defendants have regarding bates labeling can be remedied by producing such files in "locked" and "password protected" form. *Id.* Plaintiffs contend that defendants' motion should be denied. *Id.*

In reply, defendants explain how they maintain a Billing Tracker spreadsheet that lists billing information and hours worked, but that they do not transmit the Billing Tracker spreadsheet to the payroll company as plaintiffs suggest they do. *Id.* Defendants assert that they submit all hours, etc. to the payroll company via an online template program provided by the payroll company, and do not maintain electronic records of the input. *Id.* With regard to the TOA records, defendants contend that they have no authority or license to produce any information, and Cox simply permits them access to the TOA software. *Id.*

In response to plaintiffs' assertion that defendants should have sought a protective order or password protect the files, defendants argue that this assertion is "fundamentally unsound." *Id.* Defendants assert that plaintiffs are not entitled to irrelevant payroll records, and that the protective

4

order would only protect from public dissemination, and not eliminate production of records that plaintiffs are not entitled to under Rule 26.  *Id.*

**C.     Discussion**

During the hearing, plaintiffs' counsel indicated that there was an issue regarding whether the defendant has the requested time-clock records for 2008-2012.  Plaintiffs contend that they sought production of such records through a request for production of documents, but that they have not received responsive documents.  Defendants' counsel represented to the court during the hearing that the records were not produced because no such records exist.  Defendants' counsel is hereby ordered to provide to the court and to plaintiffs' counsel a written confirmation that no time-clock records for 2008-2012 exist within one week from the entry of this order.

Defendants' counsel stated during the hearing that defendants have provided Billing Trackers, in their native, electronic form, for 2009-2012, to plaintiffs's counsel.  Defendants' counsel further stated that such electronic records do not exist for 2008, because the defendants did not maintain electronic records at that time.  Defendants' counsel also indicated that defendants did not utilize Southwest Payroll's services during 2008, but used a different company called Managed Pay for their payroll needs.  Plaintiffs' counsel stated during the hearing that if defense counsel would stipulate that the Billing Trackers for 2009-2012, match Southwest Payroll's records for the same time period, then plaintiffs' counsel will waive the production of the Southwest Payroll records in their electronic form. If agreed to by the parties, a stipulation to that effect shall be filed within one week from the entry of this order.

With regard to the records for 2008, defendants' counsel shall provide plaintiffs' counsel with any information he or the defendants possess relating to Managed Pay, the company that provided services for defendants in 2008, within one week from the entry of this order.  Plaintiffs may subpoena Managed Pay to produce its records.

The court asked the parties to address the issue with the TOA records during the hearing.

5

Plaintiffs' counsel stated that they desire to conduct an examination/inspection of the TOA system, and defendants' counsel stated that defendants have no relationship with TOA and that the system only has a "look back" of 120 days.  The court stated that it was not going to order an inspection, but that plaintiffs could seek to depose an individual with knowledge of how the TOA system works or serve a request for inspection.  Plaintiffs' request with regard to the TOA system is denied.

In the event the defendants find that a protective order is necessary to protect the interest of those employees not similarly situated, the parties shall enter into a stipulated confidentiality agreement and protective order, which contains a provision stating that a party seeking to file a confidential document or utilize a confidential document at trial must comply with the Ninth Circuit's directives in *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006).

**Motion To Strike Declaration (#55)**

In plaintiffs' instant motion to strike, they assert that defendant Craig Lusk's declaration attached to defendants' reply should be stricken because it is not supported by any documentation.  (#55).  In paragraph 7 of Lusk's declaration, it states that "the TOA software is owned by a third-party and Cox Communications, Inc. ("Cox") licenses its use. Cox permits Pride access to the TOA software, but Pride has no rights or licenses to produce the electronic software or any records from the software." (#51).  Plaintiffs assert that this alleged restrictive license for the use of the TOA system, which would include the restriction described by Lusk, must be memorialized in writing and should have been provided to the court and the plaintiffs.  (#55).  If the same is not memorialized, then plaintiffs contend that Lusk's statement must be untrue.  *Id.*

Plaintiffs also assert that Lusk fails to explain how producing the data inputted into the TOA system would "violate an alleged license agreement restricting [d]efendants' ability to produce the software." *Id.*  Plaintiffs reassert that they are not seeking production of the TOA software, and that the defendants should be able to produce the TOA records.  *Id.*  Thus, plaintiffs argue that since the declaration only contains an "unsupported  conclusory statement about [defendants'] inability to

6

produce TOA records, it should be stricken." *Id.*

Defendants assert in their opposition that the plaintiffs' motion should be denied because it "lacks any legal authority or facts to support" it. (#59). Defendants contend that Lusk is "the only individual from Pride with relevant knowledge of the facts attested to," and that plaintiffs present no legal authority that defendants must provide some documentation in addition to the declaration. *Id.* The plaintiffs argued that defendants hadn't provided a declaration in support of their initial motion for clarification, and defendants assert that in their reply, that is exactly what they did. *Id.* Defendants resubmit their representation that the defendants do not have rights or licenses to produce the software or records from the software, and that the license agreement between Cox and TOA is not in the possession, custody, or control of Pride. *Id.*

Pursuant to Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Based on defendants' counsel's representations during the hearing that support the statements in defendant Lusk's declaration, the court finds that striking defendant Lusk's declaration is not warranted.

**Motion For Contempt**

    **A.**    **Arguments**

Plaintiffs ask this court to find defendants in contempt of court for failing to comply with the court's order (#39) requiring the production of the requested documents "in any and all available forms, on or before November 30, 2011." (#50). Plaintiffs assert that the documents produced by defendants do not comply with the order, as they are not in electronic form, and that when plaintiffs sent a letter to that effect on December 5, 2011, defendants did not communicate with plaintiffs in an attempt to resolve the issue. *Id.* Plaintiffs argue that the defendants had no good faith basis for filing the motion for clarification, and that the purpose of defendants' motion was to delay discovery and the progress of the action. *Id.*

Plaintiff requests the court to (1) issue an order to show cause why defendants should not be

held in contempt of court for their willful refusal to comply with the court's order; (2) find defendants in civil contempt of court; (3) enter civil contempt sanctions, to be paid to the court, against defendants in an amount sufficient to deter future similar conduct, which are to be awarded to the court; (4) order defendants to produce the discovery in its native, computerized form as previously ordered by the court on October 26, 2011 (#39); and (5) award plaintiff his attorneys' fees incurred because of defendants' failure to comply with the court's October 26, 2011 order and their fees associated with responding to the defendant's motion for clarification of the court's order.  *Id.*

Plaintiffs argue that the defendants have not only failed to comply with the court's order, but have not taken any steps to comply with the order by not engaging in dialogue with plaintiffs' counsel regarding the production.  *Id.*  The plaintiffs' original motion to compel dealt with plaintiffs' dissatisfaction with the defendants' production of documents in "static PDF or paper" form.  *Id.* Plaintiffs argue that defendants produced the exact same type of records *after* the court ordered otherwise.  *Id.* This demonstrates the defendants willful violation of the court's order.  *Id.*  Plaintiffs' counsel asserts that no less than 11 hours were spent corresponding with defendants' counsel, responding to the motion for clarification, and filing the instant motion.  *Id.*  Thus, plaintiffs argue that the court should award reasonable attorney's fees to plaintiffs.  *Id.*

In opposition, defendants contend that they have substantially complied with the court's order by producing "well over 1,100 documents consisting of payroll check registers, W-2's, and check stubs on November 30, 2011, and supplement[ing] this production with additional records on December 5, 2011, and January 6, 2012."  (#53).  Defendants assert that they have taken steps to comply with the order, and that their motion for clarification is an example of one of those steps.  *Id.*  Defendants disagree with plaintiffs regarding the purpose of the plaintiffs' motion to compel, and assert that the "focus centered around [d]efendants' objection to producing payroll records maintained by a third-party payroll company and for those individuals subject to the "similarly situated" definition."  *Id.*

Defendants argue that sanctions are not appropriate, because once the plaintiffs notified

defendants in the December 5, 2011, letter that they were not satisfied with the production, defendants, in an attempt to be in compliance with the court's order, filed the motion for clarification. *Id.* Defendants acted in good faith, and only sought guidance from the court regarding its concern with disclosing third-parties' confidential information and how is was to produce the TOA records when a third-party owns the software. *Id.* This is not evidence of "dilatory litigation practices," but of the defendants taking reasonable steps to comply with the order. *Id.* Awarding attorneys' fees is not appropriate, defendants assert, because plaintiffs made the decision to file the opposition to the motion for clarification and the instant motion for contempt. *Id.*

**B.    Relevant Law/Discussion**

Fed. R. Civ. P. 37 (b)(2)(A), "[i]f a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following: (I) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."

Rule 37(b)(2)(C) state that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The Court has the "inherent power to enforce compliance with [its] lawful orders through civil contempt. See, *Cal. Dept. Of Soc. Servs, v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008). The party moving for civil contempt "must demonstrate

1  that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a

2  preponderance of the evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693,

3  695 (9th Cir. 1993); see also *1st Tech., LLC v. Rational Enters.*, No. 2:06-cv-01110-RLH-GFW 2008

4  U.S. Dist. LEXIS 106100, at *16 (D. Nev. July 29, 2009) (holding that the moving party must

5  demonstrate contemnors violated a specific and definite order of the court by clear and convincing

6  evidence.  Once such showing is made, the party opposing contempt can avoid a contempt finding by

7  showing it "has taken all reasonable steps it can take to comply." *Richmark Corp. v. Timber Falling*

8  *Consultants*, 959 F.2d 1468, 1479 (9th Cir. 1992) (emphasis added).

9        The court finds that sanctioning the defendants is not warranted.  The defendants have

10  substantially complied with the court's order by producing 2,450 documents, including the Billing

11  Trackers for 2009-2012, in their native, electronic form, and, as the parties represented to the court

12  during the hearing, the parties will be working together to ensure that the discovery in this action

13  continues to move forward without further delay.

14  **Motion To Strike Julio Fernandez' Consent To Joinder (#54)**

15        On January 19, 2012, Julio Fernandez filed a consent to joinder under 29 U.S.C. § 216(b).

16  (#52).  On January 31, 2012, defendants filed the instant motion to strike the joinder, asserting that the

17  joinder is untimely.  (#54).

18        On June 26, 2011, Judge Leavitt recommended that the notice of pendency of this action should

19  require all consents to joinder to be filed within sixty (60) days from the date the notice is mailed.

20  (#23).  Judge Mahan adopted the recommendation on August 26, 2011.  (#32).  On September 2, 2011,

21  defense counsel supplied plaintiffs' counsel with a list of current and former employees who were to

22  receive the notice, and supplemented this list on September 7, 2011.  (#54 Exhibit A).  Julio Fernandez'

23  name was on the initial list, and plaintiffs' counsel dispatched notice to Julio Fernandez on September

24  6, 2011.  On December 12, 2011, defendants realized that some employees were inadvertently left off

25  the lists, and provided plaintiffs' counsel with the name of sixteen additional employees.  (#54 Exhibit

26

10

1    A).  The court permitted notice to be issued to these sixteen employees and provided a new sixty day

2    opt-in period for these newly added employees only.  (#48).

3        On the notice of joinder form Julio Fernandez filed with the court, it expressly states that the

4    joinder must be received by November 7, 2011.  (#52).  Since Julio Fernandez' joinder was filed on

5    January 19, 2012, two months late, defendants assert the notice should be stricken.  (#54).

6        Plaintiffs assert that the joinder should not be stricken, because the late filing "will not

7    negatively impact the progress of this case where consent filing is continuing in any event."  (#57).  In

8    *Davis v. Westgate Planet Hollywood Las Vegas, LLC,* (Case No 2:08-cv-722) (D. Nev. July 27, 2009),

9    Judge Leen held that when defendants had provided plaintiffs with an incomplete opt-in list, individuals

10   on the first list could file consents during the second opt-in period.  Other District Courts have taken

11   the same lenient approach, plaintiffs argue, and defendants have not provided the court with one case

12   demonstrating otherwise.  (#57); See *Kelley v. Alamo*, 964 F.2d 747, 749-750 (8th Cir. 1992); *Mitchell*

13   *v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211(1959); *De Ascencio v. Tyson Foods*, 342 F.3d 301,

14   312-13 (3rd Cir. 2003)(reversing District Court's refusal to re-open FLSA joinder period, such refusal

15   was unfair and did not promote judicial economy).

16       Plaintiffs assert that since discovery is in its preliminary stage, depositions have not been

17   scheduled, and there is not likely to be much individual discovery, permitting the joinder will not delay

18   the action.  See *Monroe v. United Airlines*, 94 F.R.D. 304 (N.D. Ill. 1982); *Wagner v. Loew's Theaters*

19   *Inc.* 76 F.R.D. 23, 24 (M.D.N.C. 1977) (the opportunity for plaintiffs to "opt in" to a case must remain

20   available until "a reasonable time before trial").  "[T]he FLSA's remedial purposes and the imperatives

21   of judicial economy are hardly served by excluding numerous class members who would either forfeit

22   their claims or file duplicative claims."  *In re Wells Fargo Home Mortgage Overtime Pay Litg.*, 2008

23   U.S. Dist. LEXIS 88851 (N.D. of Calif.).

24       Plaintiffs also assert that permitting the consent joinder is warranted because Julio Fernandez

25   "will remain a members of the putative Nevada overtime and minimum wage Rule 23 class even if his

26

11

FLSA consent is stricken," and "compelling this plaintiff to institute a separate litigation, solely to collect his FLSA liquidated damages, would be inefficient and is not warranted." (#57). Plaintiffs state that the court should toll the statute of limitations if the joinder is not permitted. *Id.*

In defendants' reply, they assert that the plaintiffs present a "fundamental misunderstanding of the facts of this case," and argue that the joinder should be stricken.  (#60).  Defendants assert that plaintiffs have not demonstrated, or even attempted to demonstrate, that good cause exists as to why Julio Fernandez failed to file a timely joinder. *Id; In Re Wells Fargo Home Mortg. Overtime Pay Litig.,* No. MDL 06-01770 MHP, 2008 U.S. Dist. LEXIS 88851, at *9 (N.D. Cal. Oct. 23, 2008)(allowing late joinders where the individuals offered "an explanation showing goof cause for their tardiness.").  There is no evidence that he did not receive the notice or that he was unable to file before January 19, 2011. *Id.*

Defendants assert that allowing Julio Fernandez to join the action in violation of the court's order will prejudice the defendants, because the defendants will be "forced to wait until 30 days prior to trial, and perhaps later, to learn the identity of all opt-in plaintiffs in this case, effectively stripping them of the opportunity to conduct discovery on the individual claims of each opt-in plaintiff." *Id.* Defendants also contend that there is no valid reason to toll the statute of limitations. *Id*; See *Cranney v. Carriage Svcs., Inc.,* 559 F. Supp. 2d 1106, 1108-09 (D. Nev. 2008); *Bonilla v. Las Vegas Cigar Co.,* 61 F. Supp. 2d 1129, 1140 (D. Nev. 1999)(stating that the doctrine of equitable tolling applies in "two distinct kinds of situations," (1) plaintiffs were prevented from asserting their claims by some wrongful conduct of the defendants, and (2) extraordinary circumstances beyond the plaintiffs' control made it impossible to file the claims on time.").  Defendants argue that the late filing of the consent to join was simply due to Julio Fernandez's lack of diligence in pursuing his alleged claims, and that he should not be awarded for this failure. (#60).

Pursuant to the court's order (#48) regarding the second opt-in period, the last day for employees to file a consent to joinder was February 20, 2012.  The court finds that since the second opt-in period

12

has closed, and there is not a possibility, as defendants' assert, that defendants will be prejudiced due to a flood gate of late opt-ins, Julio Fernandez's notice of joinder (#52) filed on January 19, 2012, is permitted.  Defendants' motion to strike the joinder (#54) is denied.  The opt-in period is closed, and the court will only consider reopening the opt-in period in the event that the defendants have provided plaintiffs with an incomplete opt-in list.

Accordingly, and for good cause shown,

IT IS ORDERED that defendant Pride Communications, Inc., *et al*'s Motion For Clarification of the Court's Order (#47) is GRANTED as discussed above.

IT IS THEREFORE ORDERED that defendants' counsel shall provide the court and the plaintiff with written confirmation that no time-clock records exist for 2008-2012, within one week from the entry of this order.

IT IS FURTHER ORDERED that the parties, if they reach an agreement, shall file a stipulation regarding the Billing Trackers matching the Southwest Payroll records for 2009-2012, within one week from the entry of this order.

IT IS FURTHER ORDERED that the defendants shall provide plaintiffs with information regarding Managed Pay within one week from the entry of this order.

IT IS FURTHER ORDERED that plaintiffs' counsel's request for the court to order an inspection of the TOA system is DENIED.

IT IS FURTHER ORDERED that plaintiffs' Motion To Strike the Declaration of Craig Lusk In Support of Defendants' Reply (#55) is DENIED.

IT IS FURTHER ORDERED that plaintiffs' Motion For Contempt And To Enforce Court's Order (#50) is DENIED.

. . .

. . .

. . .

13

IT IS FURTHER ORDERED that defendants Motion To Strike Julio Fernandez's Consent To Joinder (#54) is DENIED.

DATED this 6th day of March, 2012.

_____

**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**

14