**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**\* \* \***

| | |
|---|---|
| ANTHONY KISER, *et al.,* | ) |
| | ) |
| Plaintiff, | ) |
| | )    2:11-cv-00165-JCM -VCF |
| v. | ) |
| | )    **O R D E R** |
| PRIDE COMMUNICATIONS, INC.*, et al.,* | ) |
| | )  (Motion To Compel Non-Party Cox |
| | )  Communications Las Vegas, Inc.'s |
| | )  Compliance with a Subpoena Duces Tecum |
| | )  #72) |
| Defendants. | ) |
| ———————————————— | ) |

Before the court is plaintiffs Anthony Kiser *et al*'s Motion To Compel Non-Party Cox Communications Las Vegas, Inc.'s Compliance with a Subpoena Duces Tecum. (#72). Non-Party Cox Communications Las Vegas, Inc (hereinafter "Cox") filed an Opposition (#75), and plaintiffs filed a Reply (#76).

**Background**

Plaintiff Anthony Kiser filed his class action complaint on behalf of himself and "all persons similarly situated," seeking overtime wages under the Fair Labor Standards Act (hereinafter "FLSA") and state law. (#1). The purported class members consist of those employed by defendant Pride as installers to perform installation of cable, internet, and phone services. *Id.* Specifically, plaintiff Kiser contends in the complaint that these employees were paid on a per job or "piece rate" basis, and were never compensated for overtime for working an excess of forty (40) hours per week. *Id.* Plaintiff alleges that the "payroll check registers, billing trackers, and time clock records maintained by Pride were all fictitious and created to evade the overtime payments requirements of the FLSA." (#28).

On July 29, 2011, plaintiffs filed a motion to compel (#28), asking this court to enter an order

"directing that defendants produce materials that are properly responsive to certain requests in plaintiffs' First Request for the Production of Documents." Defendants opposed the motion, asserting that they should not be compelled to produce the electronic information because, among other reasons, it is irrelevant and the defendants do not maintain the information sought. (#29).

On October 26, 2011, the court issued an order granting the motion to compel (#28), and ordering defendants Pride Communications, Inc. *et al* to produce the requested documents, in any and all available forms, on or before November 30, 2011. (#39). The court overruled defendants' objection that they were not in possession of the information sought, and stated that since "defendants requested and ordered the third-party payroll vendor, Southwest Payroll Service, Inc., to perform the acts of processing and maintaining the payroll and the accompanying records," "it is "inconceivable" that the defendants lack the ability to request and obtain such records from Southwest Payroll Service, Inc." *Id.*

On November 30, 2011, defendants produced over 1,100 documents consisting of payroll checks registers, W-2's, and check stubs. (#47). On December 5, 2011, and January 6, 2012, defendants supplemented their production with additional records. *Id.* On December 5, 2011, after the defendants supplemented their production, plaintiffs' counsel sent a letter to defendants asserting that the document productions were only "partially in compliance with the [c]ourt's [o]rder," and seeking production of the material produced in PDF format to be produced in its "native, electronic form." (#47 Exhibit C).

Defendants filed a motion on December 15, 2011, seeking clarification of this court's order (#39) as to the electronic records it must produce. (#47). As it pertains to the motion now before the court, defendants also addressed TOA Technologies, Inc (hereinafter "TOA") records requested by the plaintiffs. *Id.* Defendants contended that these records are on a "web-based system," and that since the TOA software is owned by a third-party and Cox Communications (hereinafter "Cox") licenses its use, defendants "have no rights or licenses for its use." *Id.* Defendants argue that there is no way to produce such records "short of printing them out and producing a hard copy," and that the records would still need to be redacted. *Id.*

2

The court held a hearing on March 5, 2012, addressing the defendants' motion (#47) and other pending motions (#55, #50, and #54). (#62). Defendants represented at the hearing that Cox and Pride are only capable of accessing TOA records dating back 120 days, and then only in static paper report format. *Id.* In an order entered on March 6, 2012, the court held that "it was not going to order an inspection (of the TOA system), but that plaintiffs could seek to depose an individual with knowledge of how the TOA system works or serve a request for inspection." (#63). On March 15, 2012, plaintiffs served non-party Cox with a subpoena duces tecum (#72 Exhibit A). Cox served plaintiffs' counsel with objections (#72 Exhibit B) and filed a motion to quash the subpoena (#66). The court denied the motion to quash as unnecessary, and stated that "[p]rior to filing a motion to compel, the parties must comply with Local Rule 26-7(b), which requires the parties to meet and confer in a sincere effort to resolve the matter without court action." (#67). On June 22, 2012, plaintiffs filed the instant motion to compel. (#72).

**Motion To Compel (#28)**

    **A.    Plaintiffs' Argument**

Plaintiffs argue that Cox should be compelled to produce documents requested in the subpoena duces tecum (#72 Exhibit A), specifically, the contract between Cox and TOA Technologies*, Inc* (hereinafter "TOA"). (#72). Plaintiffs assert that the contract is the only document that Cox concedes it possesses that discusses the TOA system, but that Cox refuses to produce it.[1] *Id.* The subpoena sought production of "[a]ll documents and electronically stored information relating to the operation, use, or maintenance of the TOA system by Cox Communications Las Vegas, Inc. and/or its

---

[1]  Plaintiffs assert that "Cox's Position That It Maintains No Documents Discussing TOA's Capabilities, Except the TOA Contract, is Ridiculous and Evasive of the Subpoena..." (#72). Plaintiffs' counsel wrote a letter dated June 13, 2012, attempting to confirm Cox has no documents of any fashion, even if not "instruction manuals" discussing the use or operation of the TOA system (#72 Exhibit G). *Id.* Cox's counsel responded on June 20, 2012, refusing to confirm the same. (#72 Exhibit H). Plaintiffs asserts that "[a]t this point all the Court can address, directly, is the production of the contract which Cox admits it possesses." (#72).

subcontractor, Pride Communications, Inc." (#72 Exhibit A). The subpoena excluded "[m]aterials exclusively concerning the economic terms of Cox Communications Las Vegas, Inc.'s, use, operation, rental or purchase of the TOA system, such as the fees paid to the sellers, owners or providers of the TOA system or fees paid for support services related to the TOA system." *Id.*

Plaintiffs' counsel asserts that he "was made aware of the existence of a contract between Cox and TOA Technologies, Inc., which grants Cox a license to use the work force management software system known as TOA." (#72 Exhibit C). Plaintiffs argue that this contract "presumably" contains information relevant to "Cox's (and by implication Pride's) ability to reproduce TOA records pertaining to the work performed by the plaintiff and the members of the putative plaintiff class." (#72). Plaintiffs also assert that the contract may indicate that TOA information is archived and can be retrieved past the 120 day access period alleged by the defendants and may contradict the representations of Cox and Pride that "only very limited amounts, and forms, of TOA data can be produced." *Id.*

Cox refused to produce the contract, asserting that the contract "discusses its fee arrangement and does not contain instructions on how to operate TOA." (#72 Exhibit C). Cox relies on the section of the subpoena that excluded from production "[m]aterials ***exclusively*** concerning the economic terms of Cox Communications Las Vegas, Inc.'s, use, operation, rental or purchase of the TOA system, such as the fees paid to the sellers, owners or providers of the TOA system or fees paid for support services related to the TOA system." (#72 Exhibit A) (emphasis added). Plaintiffs assert that, under this section, the *entire* document is not exempt from production just because it contains financial information, and the document would have to ***exclusively*** contain financial information to be exempt. (#72).

Cox also refused production because the contract is "confidential between Cox and TOA and cannot be disclosed to third parties." (#72 Exhibit E). Plaintiffs argue that any confidentiality issues can easily be addressed through a protective order, but that Cox "refused plaintiffs' counsel's invitation" to enter into such an order. (#72). Plaintiffs also argue that Cox has not even substantiated its claim of confidentiality. *Id.* Plaintiffs represent to the court that counsel has "undertaken sincere efforts, in

4

compliance with LR 26-7(b), to attempt to resolve this discovery dispute, either in whole or in part, without judicial intervention," but that these attempts have been unsuccessful. *Id.*

### B.    Cox's Argument

Cox asserts that the motion to compel was brought in bad faith, as the subpoena did not request the contract, and in fact, excluded its production.  (#75).  Even if the court finds that the subpoena did request the contract, Cox argues that (1) the contract is irrelevant, (2) plaintiffs have obtained extensive discovery regarding the TOA system, (3) that the burden and expense outweighs the benefit, and (4) that the plaintiffs are harassing Cox through the instant motion and the subpoena. *Id.*  Cox asserts that plaintiffs' counsel did not learn of the contract until *after* the subpoena was issued, and that throughout the subpoena, the word "contract" is not found. *Id.*

Cox goes through the language of the subpoena to demonstrate that the contract was not sought: "This first paragraph plainly requests documents related to the "use and/or operation" of the TOA system, such as instruction manuals and the like, but it expressly excludes documents related to the economic terms of Cox's use of the TOA system,  such as the contract between Cox and TOA." *Id.* "The second paragraph, . . . asks for information from the TOA system including "all records of work performed by Pride Communications, Inc. for Cox Communications Las Vegas Inc. after December 21, 2007, and until the date or your receipt of this subpoena ... ," but this second paragraph does not ask for any contracts." *Id.*

Cox also asserts that it complied with the subpoena by serving its objections and including a declaration of Karen Ridges (#66 Exhibit C). *Id.*  These documents explained Cox's position that (1) Cox "does not keep any instruction manuals or similar materials for TOA's workforce management software in Cox's possession," (2) Cox "did not provide manuals, guides, and instructions or the other items listed to Pride," (3) instruction manuals and similar materials "are maintained by, and are proprietary to TOA," and (4) electronic records or paper copies concerning work performed by Pride in the TOA could be obtained from Pride, a defendant in the lawsuit. *Id.*

Cox attempted to resolve the issue with the production of the contract, it asserts, in a letter dated April 20, 2012, by stating that the contract discusses fee arrangements and does not contain instructions on how to operate TOA. *Id.* (Exhibit B). This "seemed to satisfy plaintiff[s]," Cox argues, as plaintiffs' counsel did not reply for nearly two months, and served Cox with a Rule 30(b)(6) deposition notice. *Id.* Cox eventually agreed to the deposition, which plaintiffs later unilaterally cancelled. *Id.*

"Even if the contract had been requested," Cox asserts, the court must weigh the benefit with the burden. *Id.* Cox argues that the contract is confidential and irrelevant, and that the court has broad discretion to make that determination and deem the subpoena burdensome or oppressive. *Id.* Cox states that the plaintiffs offer nothing but speculation as to what the contract ***might*** include, and the relevance thereof. *Id.* Plaintiffs only state in their motion that the contract "may contain terms," "presumably contains information," "may also indicate that TOA information is archived," and "may well contradict." *Id.*

Cox also asserts that the contract is not "even arguably relevant," and that plaintiffs are "searching for information concerning the hours worked by the employees of Defendant Pride," which is not reflected in the contract. *Id.* Cox explains that the TOA software is an internet based package, where the user, Pride, "creates records which generally include information such as the start and stop times, but these times, may or may not be accurate and are sometimes not entered contemporaneously." *Id.* Cox further states that Pride has already produced the requested TOA data to the plaintiffs, including any information contained within the data which might reflect start and stop times..." *Id.* Cox does not have access to data other than what is available to defendant Pride. *Id.* Cox argues that, as a *non-party,* it should not be burdened to produce documents that Pride, a defendant, could produce or already has produced. *Id.*

As a final argument, Cox asserts that plaintiffs have already conducted extensive discovery in another case, including five depositions relating to the use and operation of the TOA system. *Id.* Cox states that if the court intends to compel Cox, the court has broad authority to craft an order that would

6

1    partially protect Cox from Plaintiffs' harassment through cost-shifting..." *Id.*

2           **C.      Relevant Law/Discussion**

3           Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding

4    any nonprivileged matter that is relevant to any party's claim or defense...," and that, "[f]or good cause,

5    the court may order discovery of any matter relevant to the subject matter involved in the action."  The

6    plaintiffs seek the production of the contract between Cox and TOA, and argue that this contract

7    "presumably" contains information relevant to "Cox's (and by implication Pride's) ability to reproduce

8    TOA records pertaining to the work performed by the plaintiff and the members of the putative plaintiff

9    class." (#72).  Plaintiffs also assert that the contract may indicate that TOA information is archived and

10   can be retrieved past the 120 day access period alleged by the defendants and may contradict the

11   representations of Cox and Pride that "only very limited amounts, and forms, of TOA data can be

12   produced."  *Id.*  Plaintiffs seek production of the contract to support plaintiffs' position that the

13   defendants are misrepresenting their inability to access the TOA records past 120 days or to produce

14   the records in electronic form, not to support plaintiffs' claims under FLSA.

15          The court finds that the *contract* itself is not relevant to any parties' claim or defense, and that

16   the plaintiffs have not demonstrated "good cause" for its production as required by Rule 26.  Fed. R.

17   Civ. P. 26(b)(1).  The court does find, however, that the records maintained by the TOA system during

18   the operative time-period, if any, are relevant to the plaintiffs' claims.  The plaintiffs have the ability

19   through discovery to subpoena TOA for the production of such records and/or to depose a person most

20   knowledgeable regarding how the system works, including the ability to access records past 120 days

21   and whether the records are available in electronic format.

22   . . .

23   . . .

24   . . .

25   . . .

26

Accordingly, and for good cause shown,

IT IS ORDERED that plaintiffs Anthony Kiser *et al*'s Motion To Compel Non-Party Cox Communications Las Vegas, Inc.'s Compliance with a Subpoena Duces Tecum (#72) is DENIED.

DATED this 23rd day of August, 2012.

_____
**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**